## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC DEMUN, | ) | Civil Action No. 5:25-cv-01001 |
| | ) | |
| *Plaintiff*, | ) | Filed Electronically |
| | ) | |
| vs. | ) | |
| | ) | |
| LEVAN MACHINE CO., INC. d/b/a LEVAN | ) | |
| MACHINE & TRUCK EQUIPMENT, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Eric Demun, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendant, Levan Machine Co., Inc. d/b/a Levan Machine & Truck Equipment, averring as follows:

### PARTIES

1.      Plaintiff, Eric Demun ("Plaintiff"), is an adult individual who resides in Mertztown, PA 19539.

2.      Defendant, Levan Machine Co., Inc. d/b/a Levan Machine & Truck Equipment ("Defendant"), is registered with the Pennsylvania's Department of State as a domestic business corporation formed in the Commonwealth of Pennsylvania, which maintains a registered office in Berks County with their principal place of business located at 3417 Pricetown Road, Fleetwood, PA 19522 (the "Facility").

## JURISDICTION AND VENUE

**A.**     **This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the Fair Labor Standards Act 29, U.S.C. § 201, *et seq*. ("FLSA") (Plaintiff's claim arising under the FLSA is identified as the "Federal Law Claims").

4.     Plaintiff is also advancing claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*. ("MWA") and common law theories of Unjust Enrichment (Plaintiff's claims arising under the MWA and Unjust Enrichment are identified as the "State Law Claims").

5.     This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

6.     Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United States Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.**     **The United States District Court for the Eastern District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania (the "Eastern District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

8.      Specifically, these events and omissions occurred in Berks County, Pennsylvania which is one of the counties encompassed by the Eastern District.

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

9.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.

10.     42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).  This exercise of personal jurisdiction is expanded to "corporations" within 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations. --
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

11.     As discussed above, Defendant is a domestic business corporation, incorporated under the laws of the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa C.S. § 5301(a)(2)(i).

12.     Accordingly, Defendant may properly be brought before this Court pursuant to 42 Pa. C.S. § 5301(a).

## FACTUAL BACKGROUND

13.     In or about January of 2019, Plaintiff commenced employment with Defendant in the role of "Yardperson."

14.     In or about June of 2019, Plaintiff became a "Sprayliner Technician" for which Defendant compensated Plaintiff at a rate of approximately $27.00 per hour.

**A.     Defendant Misclassified Plaintiff's Overtime Eligibility and Deprived Plaintiff of His Lawfully Owed Wages.**

15.     From June of 2019 through February of 2023, Plaintiff was paid on a "per-job" basis, however, he also received an additional compensation of $17.00 per hour for certain types of work he performed.

16.     This continued until he lodged complaints with Defendant in 2022 regarding the lack of overtime pay, after which he was demoted in February of 2023.

17.     Primarily, Plaintiff would be tasked with different "jobs" each of which carried with it a pre-identified "flat rate;" however, Plaintiff's wages would fluctuate based on the amount of hours he worked for Defendant.

18.     From June of 2019 through February of 2023, Plaintiff routinely worked in excess of 40 hours per week and therefore accrued overtime-eligible wages.

19.     However, Defendant erroneously informed Plaintiff that because of the "per-job" basis, Plaintiff was not entitled to an overtime rate of pay.

20.     In order to be exempt from overtime pay, an employee must fall under one of the well-established exemption classifications under the FLSA.

21.     At all times relevant hereto, Plaintiff's wages fluctuated based on the amount of hours he worked for Defendant.

22.     Further, the work performed by Plaintiff involved manual, blue-collar work that does not align with any of the recognized exemptions under the FLSA.

23.    Accordingly, Plaintiff was a non-exempt employee and should have been paid an overtime rate of time and a half for all hours in excess of 40 hours worked within each seven-day period.

24.    Therefore, Plaintiff was not within any of the FLSA exemptions since he was not a salaried employee, and his wages fluctuated based on the amount of hours he worked.

25.    From June 2019 through February 2023 (approximately 191 weeks), Plaintiff routinely worked no less than 47 hours per week and correspondingly was denied 1,337 hours of overtime that accrued within this period.

26.    To date, Defendant has failed to compensate Plaintiff for the accrued overtime wages.

**B.    Defendant Unlawfully Retaliated for Plaintiff's Wage Complaints.**

27.    On at least three different occasions throughout 2022, Plaintiff complained to his supervisors and Defendant's executives about his concerns regarding his erroneous exempt status.

28.    Specifically, Plaintiff discussed this matter with CEO Brian Levan, Business Manager Paul Veet, and New Install Manager Time Marks (collectively, "Management").

29.    Plaintiff's final complaint was made to Management at the end of 2022.

30.    Thereafter, on February 16, 2023, Defendant eliminated Plaintiff's entitlement to flat-rate jobs and demoted him to a strictly hourly employee.

31.    This was a materially adverse change to the conditions of Plaintiff's employment and compensation structure.

32.    It is believed and therefore averred, that Defendant disliked Plaintiff's continued complaints about his entitlement to overtime and instead of properly compensating Plaintiff for what he was owed, Defendant reduced his income as a way to silence and punish Plaintiff.

33.    The retaliatory reduction in Plaintiff's work duties resulted in a loss of approximately $13,500.00 in annual income in 2023.

34.    Plaintiff retained counsel and complained about his entitlement to overtime, by and through his attorney, in April, 2024.

35.    In retaliation, Defendant further reduced Plaintiff's income by reducing his 2024 Christmas Bonus to approximately $200, while his similarly situated peers received $1,000, as was customary.

36.    Finally, Defendant completed its retaliation by terminating the Plaintiff in December, 2024.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF THE FLSA
## 29 U.S.C. § 201, *et seq.*

37.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

38.    Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

39.    Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in

> commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

29 .S.C. § 207(a)(1) (emphasis added).

40.    This minimum pay mandate is incumbent upon "employers" who through the course of their business practices are "engaged in commerce." 29 U.S.C. §§ 203(d), (s)(1).

29 U.S.C. § 203(d) delineates the definition of an employer as follows:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d).

41.    Moreover, The Third Circuit recognizes that liability for violations of the FLSA attaches not just to the corporate entity itself, but also to the owners, officers, and supervisory personnel of the organization at issue. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

42.    The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

43.    Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual

gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

44.    In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

45.    An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

46.    The definition of "employee" is also recognized as "exceedingly broad" as to properly effectuate of the remedial purposes of the FLSA.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

47.    29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

48.    To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether

> the service rendered is an integral part of the alleged employer's
> business.

*Martin,* 949 F.2d at 1293 *(*quoting *Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376, 1382 (3d Cir. 1985)).

**A.      Defendant is an "Employer" Pursuant to 29 U.S.C. § 203.**

49.      Defendant extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates.

50.      Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant.

51.      At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

52.      At all times relevant hereto, Defendant controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

53.      As a business entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

54.      As such, Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

**B.      Defendant is an "Enterprise Engaged in Commerce" Pursuant to 29 U.S.C. § 206.**

55.      Pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00. *Id.*

56.    Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

57.    In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

58.    Upon information and belief, Defendant purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within Pennsylvania.

59.    Defendant also transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

60.    Therefore, Defendant regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

61.    Upon information and belief, Defendant provides remodeling and construction improvements and renovations to residential homes and commercial buildings in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, Defendant had an annual dollar volume of sales in excess of $500,000.00.

62.    Hence, Defendant satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

63.    Accordingly, Defendant is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

**C.**    **Plaintiff was an "Employee" Within the Scope of 29 U.S.C. § 203.**

64.    The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

65.    To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

66.    In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status, as averred above, and Plaintiff meets these criteria.  See *Martin*, 949 F.2d at 1293.

67.    At all times relevant hereto, Defendant possessed and, in fact, exercised its rights to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to work as a laborer.

68.    Defendant also exerted significant control over the manner in which Plaintiff performed his workplace duties, instructing him in a precise manner regarding the subtasks that he had to effectively perform said duties. Further, Defendant delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated the speed in which Plaintiff was to complete his tasks, and designated the specific projects on which Plaintiff was to perform as a laborer.

69.    Plaintiff had no personal financial investment in Defendant's operations.

70.    Instead, Plaintiff was compensated at a determined hourly rate in his role. All the compensation that Defendant disbursed to Plaintiff was derived from hours recorded by Defendant and Defendant's wage payment practices; Plaintiff was dependent on these schemes of compensation for

his pay; and Plaintiff never had the opportunity to obtain bonuses or other forms of additional renumeration based on the exercise of managerial skill or productivity.

71.     Further, Plaintiff did not utilize his own equipment while working for Defendant, and Defendant provided Plaintiff with all the supplies, tools, and equipment necessary for him to perform his job duties as a laborer.

72.     Although Plaintiff did not utilize any "special skill" akin to that of a licensed professional, the workplace duties of which Plaintiff completed were an integral component of Defendant's day-to-day operations because Plaintiff performed the labor services necessary for Defendant to market and provide remodeling and construction improvements and renovations to residential homes and commercial properties.

73.     Plaintiff is therefore an "employee" for purposes of the FLSA.

**D.      Plaintiff was Denied and Overtime Rate of Pay Pursuant to 29 U.S.C. § 205.**

74.     At all times relevant hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond forty hours in a seven-day period. 29 U.S.C. § 207(a)(1).

75.     As previously averred, from June of 2019 through February of 2023, Plaintiff routinely worked 47 hours of compensable work time per week that he expended and that Defendant was legally obligated to compensate him at the overtime rate for hours worked in excess of 40.

76.     Correspondingly, he was denied 1,337 hours of overtime that occurred within this period.

77.     To determine proper overtime pay, an employer is required to divide an employee's weekly total hours worked, and then multiply anything over 40 hours by 150% overtime premium.

78.     Plaintiff's weekly flat rate pay was $1,197.11.

79.    Plaintiff's average weekly hourly pay was $85.00.

80.    Plaintiff's average weekly total pay was $1,282.11.

81.    Plaintiff's average weekly hours were 47 hours.

82.    Plaintiff's weekly total pay divided by weekly hours was $27.27.

83.    Plaintiff's time and half overtime pay should have been paid an overtime rate of $40.90 for all hours exceeding forty in a given seven-day period. .

84.    At approximately 7 overtime hours per week, dating back to the statutory limit of April 2021 and until February 16, 2023 (108 weeks), equates to $30,920.40 ($40.90 x 108 weeks x 7 hours per week) in unpaid overtime wages (the "Overtime Wages").

85.    However, Defendant misclassified Plaintiff's overtime eligibility in a manner designed to deprive Plaintiff of his overtime wages.

86.    This misclassification ultimately deprived Plaintiff of accrued compensable time that would have been compensated at the overtime rate of pay in violation of the FLSA.

**E.    Plaintiff is Entitled to Liquidated Damages, Attorneys' Fees, and Costs.**

87.    29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees.

88.    An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

89.    Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."

*Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

90.    Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

91.    Defendant's willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

92.    Defendant is unable to meet its burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights.  This is demonstrated by Defendant's willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

93.    Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

94.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

95.    WHEREFORE, Plaintiff, Eric Demun, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE MWA**
**43 P.S. § 333.101,** *et seq.*

96.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

97.    The MWA mandates a heightened rate of pay for any hour worked in excess of

forty hours per work week.  *See* 43 P.S. § 333.104.

98.    Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…."  43 P.S. § 333.104(c).

**A.    Defendant is an "Employer" Under the MWA.**

99.    The MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee."  43 P.S. § 333.103(g).

100.    The definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the MWA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

101.    As discussed above, Defendant extended a position-for-hire to Plaintiff with specified duties, start times, and pay rates.  Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant. At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

102.    At all times relevant hereto, Defendant also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

103.    As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 43 P.S. § 333.103(f).

104.    As such, Defendant is an "employer" pursuant to 43 P.S. § 333 and is therefore liable for violations of the MWA.

**B.    Plaintiff was an "Employee" Under the MWA.**

105.    The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

106.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

107.    At all times relevant hereto, Defendant possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to its decisions and directives concerning where, what routes, and what packages Plaintiff would deliver.

108.    Defendant also exerted significant control over the manner in which Plaintiff performed her workplace duties. Defendant delineated the methodologies involved in the completion of Plaintiff's duties, denoted her expected rate of productivity, and dictated the speed at which Plaintiff was to complete her tasks.

109.    Plaintiff had no personal financial investment in Defendant's operations. Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill. Plaintiff never worked in a managerial or supervisory capacity.

110.    Instead, Plaintiff was compensated at a determined rate in his role as Sprayliner Technician. All the compensation that was disbursed to Plaintiff was derived from hours he recorded, and Plaintiff was dependent on Defendants' timekeeping machinations for his pay.

111.    Further, Plaintiff did not utilize his own equipment while working for Defendant, and Defendant supplied Plaintiff with all the supplies and equipment necessary for him to perform his job duties.

112.    Nonetheless, the workplace duties which Plaintiff completed were an integral component of Defendant's day-to-day operations, as evidenced by the amount of overtime and energy that Plaintiff expended during his employment with Defendants.

113.    Finally, Plaintiff was completely dependent on Defendant to provide the work he performed.  Defendant operated the business, and such business was required in order for Plaintiff to perform his job duties.

114.    Therefore, Plaintiff is an "employee" for purposes of the MWA.

**C.    Defendant Deprived Plaintiff of an Overtime Rate of Pay.**

115.    Given Defendant's status as "employer" and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime rate of pay requirements of the MWA.

116.    That is, at all times hereto, Defendant was mandated to pay Plaintiff one and one-half times her corresponding base rate of pay for any time worked beyond forty (40) hours in a seven (7) day period.  43 P.S. § 333.104(c).

117.    As previously averred, Plaintiff routinely and regularly worked in excess of forty (40) hours per week from June 2019 through February 2023.

118.    Consequently, Plaintiff engaged in hours of work that Defendant was legally obligated to compensate him at the overtime rate of pay.

119.    However, as averred above, Defendant explicitly refused to pay Plaintiff any wages for the overtime hours that he worked pursuant to the misclassification of an overtime-eligible employee depriving Plaintiff of his lawfully owed wages.

120.     Correspondingly, he was denied 1,337 hours of overtime that occurred within this period.

121.     To determine proper overtime pay, an employer is required to divide an employee's weekly total hours worked, and then multiply anything over 40 hours by 150% overtime premium.

122.     Plaintiff's weekly flat rate pay was $1,197.11.

123.     Plaintiff's average weekly hourly pay was $85.00.

124.     Plaintiff's average weekly total pay was $1,282.11.

125.     Plaintiff's average weekly hours were 47 hours.

126.     Plaintiff's weekly total pay divided by weekly hours was $27.27.

127.     Plaintiff's time and half overtime pay should have been paid an overtime rate of $40.90 for all hours exceeding forty in a given seven-day period. .

128.     At approximately 7 overtime hours per week, dating back to the statutory limit of April 2021 and until February 16, 2023 (108 weeks), equates to $30,920.40 ($40.90 x 108 weeks x 7 hours per week) in unpaid Overtime Wages.

129.     Therefore, Defendant violated 43 P.S. § 333.104(c) in failing to pay Plaintiff overtime wages.

**D.     Plaintiff is Entitled to Actual Damages, Attorney Fees, and Costs.**

130.     In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA. 43 P.S. § 333.113.

131.     Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

132.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

133.    WHEREFORE, Plaintiff, Eric Demun, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**UNJUST ENRICHMENT**
**IN VIOLATION OF PENNSYLVANIA COMMON LAW**

134.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

135.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the Plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co*., 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

136.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd*., 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiff Conferred a Benefit Upon Defendant by Performing His Workplace Duties, and Defendant Appreciated the Benefit Plaintiff Conferred.**

137.    Plaintiff conferred a benefit to Defendant by performing workplace duties and devoting hours of work that directly resulted in the financial benefit of Defendant's enterprise.

138.     Plaintiff's performance of work hours was materially induced and premised on Defendant's representations that Plaintiff's compensation scheme entitled him to Regular and Overtime Pay.

139.     Defendant correspondingly appreciated the benefit of Plaintiff's workplace efforts in that Plaintiff performed various workplace tasks that financially benefited Defendant.

**B.     Defendant Accepted the Benefits Plaintiff Conferred, and it is Inequitable for Defendant to Retain Those Benefits Without Compensating Plaintiff**.

140.     Defendant retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

141.     By accepting Plaintiff's labor and services, and not paying Plaintiff her due wages expended in performing the labor and services, Defendant has been unduly enriched.

142.     As a matter of justice, it would be manifestly unjust and inequitable for Defendant to retain the benefit of that labor and those services without paying Plaintiff due compensation.

143.     Defendant's actions described hereinabove were the direct and proximate cause of Defendant's unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

144.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits and is entitled to recoup the amount of the benefit he conferred upon Defendants and which Defendants unjustly retained.

145.     WHEREFORE, Plaintiff, Eric Demun, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>COUNT IV</u>
**RETALIATION IN VIOLATION THE FLSA**
**29 U.S.C. § 201, *et seq*.**

146.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

147.     Plaintiff asserting a prima facie claim of retaliation under the FLSA must show three elements: (1) that he engaged in activity protected by the FLSA; (2) that he suffered adverse action by the employer subsequent to or contemporaneous with the protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. <u>See</u> 29 U.S.C. § 215*; Newsome v. City of Philadelphia*, 500 F. Supp. 3d 336<u>, 341</u>, citing <u>*Berrada v. Cohen*</u>, 792 F. App'x 158, 164 (3d Cir. 2019) (*citing* <u>*Darveau v. Detecon*</u>, 515 F.3d 334, 340 (4th Cir. 2008)).

148.     The FLSA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted an proceeding under or related to this chapter …" 29 U.S.C. § 215(a)(3).

149.     This protection extends to the Plaintiff whether or not he or the employer mistakenly believes that he has a valid FLSA claim.

150.     The retaliation provisions are placed in order to protect employees from the fear of economic retaliation for voicing grievances regarding wages.

151.     Here, Plaintiff engaged in activity protected by the FLSA by lodging numerous complaints regarding the overtime wages owed to him.

152.     Defendant retaliated against Plaintiff by demoting him, reducing his customary Christmas bonus, and by terminating him.

153.    These actions by Defendant in retaliation for asserting his rights to be paid pursuant to the FLSA were willful, retaliatory, and knowingly undertaken by Defendant to deprive Plaintiff of his legal rights to minimum wage and overtime payment as provided in the FLSA.

154.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff is entitled to punitive damages pursuant to the anti-retaliation provisions of the FLSA. 29 U.S.C. § 216(b).

155.    WHEREFORE, Plaintiff, Eric Demun, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT VI
## RETALIATION IN VIOLATION THE MWA
### 43 P.S. § 333.101, *et seq.*

156.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

157.    The MWA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employe[e] has testified or is about to testify before the secretary or his or her representative in any investigation or proceeding under or related to this act, or because such employer believes that said employe may so testify …" 42 P.S. § 333.112(a).

158.    This protection extends to the Plaintiff whether or not he or the employer mistakenly believes that he has a valid MWA claim.

159.    The retaliation provisions are placed in order to protect employees from the fear of economic retaliation for voicing grievances regarding wages.

160.    Here, Defendant retaliated against Plaintiff by demoting him as a result of lodging numerous complaints regarding the overtime wages owed to him.

161. The termination of Plaintiff by Defendant in retaliation for asserting his rights to be paid pursuant to the MWA was willful, retaliatory, and knowingly undertaken by Defendant to deprive Plaintiff of his legal rights to minimum wage payment as provided in the MWA.

162. WHEREFORE, Plaintiff, Eric Demun, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**JURY DEMAND**</u>

163. Plaintiff demands a trial by jury on all matters so triable.

<u>***AD DAMNUM* CLAUSE AND PRAYER FOR RELIEF**</u>

164. For the above-stated reasons, Plaintiff, Eric Demun, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Levan Machine Co., Inc. d/b/a Levan Machine & Truck Equipment, and prays for relief as follows:

    (a)    Declare and find that Defendants committed one or more of the following acts:

        (i)    Violated provisions of the FLSA and MWA by failing to compensate Plaintiff at an overtime rate of pay and did so willfully;

        (ii)    Violated provisions of the FLSA by misclassifying Plaintiff as "exempt" from overtime compensation and did so willfully;

        (iii)    Violated provisions of the FLSA and MWA in retaliating against Plaintiff for lodging wage related complaints; and

        (iv)    Were unjustly enriched at Plaintiff's expense;

    (b)    Award unpaid overtime wages at the statutorily-designated rate of pay and/or unpaid wages at Plaintiff's contractual hourly rate, and other

compensation denied and/or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

(c)     Award liquidated damages on all compensation due and accruing from the date such amounts were due pursuant to Plaintiff's unpaid minimum wages and/or contract wages pursuant to the FLSA and/or MWA;

(d)     Award reasonable attorneys' fees and costs of suit incurred prosecuting these claims;

(e)     Award compensatory damages to Plaintiff stemming from Defendant's unjust enrichment;

(f)     Award pre-judgment and continuing interest as calculated by the Court;

(g)     Award injunctive and other equitable relief as provided by law; and

(h)     Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  February 25, 2025

By: */s/ Kyle H. Steenland*
Kyle H. Steenland (Pa. I.D. No. 327786)
Erik M. Yurkovich (Pa. I.D. No. 83432)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com
erik@workersrightslawgroup.com

*Counsel for Plaintiff, Eric Demun*

## **VERIFICATION**

I, Eric Demun, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 2/25/2025

Plaintiff, Eric Demun